## PLOOF *v.* BANGOR TOWNSHIP BOARD.

INTOXICATING LIQUORS—LICENSES—STATUTES—SURRENDER—MANDAMUS—WORDS AND PHRASES.

> Mandamus does not lie to compel a township board to grant an application for a retail liquor license, in a township of 1,249 inhabitants which had six saloons in April, 1909, and four at the time of relator's application, two licensees having failed to apply for a renewal; since Act No. 291, Pub. Acts 1909, was intended to reduce the number of saloons to a ratio of one for each 500 inhabitants, and the term "voluntary surrender" used in the law includes failure to renew licenses which have expired.

ON MOTION FOR REHEARING.

SAME—NEW APPLICANT.

> Where it appeared, on a motion for rehearing, that the applicant for the license was a new applicant, but the license applied for had been issued to a liquor dealer during the preceding year, who had failed to apply for a renewal, the license was properly refused to relator.

Certiorari to Bay; Collins, J. Submitted July 5, 1911. (Calendar No. 24,660.) Decided January 23, 1912. Rehearing denied March 29, 1912.

Mandamus by Philip Ploof against Bangor township board to compel the respondent to grant relator's application for a retail liquor license. An order issuing the writ is reviewed by respondent on writ of certiorari. Reversed.

*Weadock & Duffy*, for relator.

*Pliny W. Marsh*, for respondent.

BROOKE, J. Relator sought and secured from the circuit court a writ of mandamus requiring respondent—

" To meet forthwith and grant to relator a license as a retail liquor dealer in said township for the year commencing May 1st, 1911, and that said respondent approve such bond as presented by relator as shall conform to the requirements of law governing bonds of liquor dealers in this State."

Respondent has removed the case to this court for review by certiorari.

The controlling facts are as follows: The population of the township of Bangor according to the last United States census is 1,249. In April, 1909, there existed in said township six places duly licensed and maintained for the sale of liquor at retail. For the license term running from May 1, 1909, to May 1, 1910, but five licenses were issued in said township; one of the six licensees of the preceding year having failed to apply for a renewal, and there being no new applicant. For the year 1910–11 but four licenses were issued in said township, one of the five licensees of the preceding year not applying for a renewal, and there being no new applicant. For the year 1911–12 the four doing business during the preceding year applied for and received licenses. Relator likewise made application on April 21, 1911, for a license, and presented there-

with a bond apparently conforming to the provisions of law.    This application was rejected by the respondent board upon the ground that to grant it would be a violation of law.

The rights of the parties depend upon a construction of the words ."voluntarily have been surrendered," contained in section 39, Act No. 291, Pub. Acts 1909.

"When applied for in accordance with the provisions of this act, bonds shall be approved by the local board, board of trustees, council or common council in each township, village and city for retail liquor dealers, not to exceed the number doing business in said township, village or city in the month of April, nineteen hundred nine. *Provided*, that if after this act takes effect the number of retail liquor dealers in any township, village or city shall be in excess of the ratio of one to each five hundred inhabitants, according to the last United States census, no license or licenses shall be issued to any person or persons to take the place of such license or licenses as shall have been revoked as in this act provided, or that shall voluntarily have been surrendered, until the ratio of the licenses granted, and the saloons in said township, village or city shall not exceed one saloon for every five hundred inhabitants thereof according to the last United States census."

It is the contention of the relator (and in this the learned circuit judge agreed with him) that there having been six duly licensed places for the sale of liquor at retail in operation in said township in April, 1909, and none having been revoked according to law, the failure to make application for one of those licenses during the year 1909–10, and for two during the year 1910–11, does not amount to a voluntary surrender of said licenses.    It is urged that a license can only be surrendered by the holder thereof discontinuing the sale of liquor at retail thereunder while it is still in force, and that the mere failure of the holder (or another) to apply for a renewal thereof at the expiration of the term does not amount to a "voluntary surrender." We are unable to agree with this contention.    A careful reading of the whole act (No. 291, Pub. Acts 1909), and particularly section 39 thereof, convinces us that the pri-

mary object of the legislature was to work a gradual reduction in the number of saloons until that number should not exceed one to each 500 inhabitants. Two methods of reduction are provided in section 39—one by revocation and one by voluntary surrender. Nowhere in the act is the term "voluntary surrender" defined. We have no hesitation in holding that where a license expires by limitation, and neither the holder thereof nor any other duly qualified persons make application therefor before the beginning of the ensuing license year, that license must be held to have been voluntarily surrendered within the meaning of the act, and it cannot thereafter be renewed until, under the provisions of the law, the population of the municipality has grown sufficiently to warrant its issuance.

We think it obvious that the legislature had in mind the exact situation here presented. It failed to provide for a return of the unearned portion of the license if surrendered while yet in force, or to define what should constitute a surrender. It is, of course, clear that through lack of applications the number of saloons in the township of Bangor might be reduced to two, and that condition might continue for a number of years. If this were so, and there was no increase in the population, we think it would hardly be contended that simply because there were six saloons in operation in April, 1909, the number could be increased from two to six, thereby defeating the purpose of the legislation, and placing the business in that municipality back exactly where it was when the legislation was enacted.

The judgment is reversed, and the writ denied.

Moore, C. J., and Steere, McAlvay, Blair, Stone, and Ostrander, JJ., concurred. Bird, J., concurred in the result.

### ON MOTION FOR REHEARING.

Brooke, J. Our attention is called to the fact that in our former opinion, *ante*, 697 (134 N. W. 3), we reached our

conclusion upon an erroneous understanding as to the facts. We gathered from the record, as it now appears erroneously, that relator's application was for a license which had been unissued to any person for an entire license year. It now appears that the license for which application was made by relator was in force from May 1, 1910, to May 1, 1911, but that the holder did not apply for a renewal thereof prior to its expiration. Relator made application therefor; and it is his contention that, being a "duly qualified person," he was entitled to the writ of mandamus under the intimation contained in our former opinion.

Had the facts been as we understood them, it is obvious that it was unnecessary to determine more than' that, under the case *there presented,* relator was not entitled to the relief sought. Under the situation actually presented, we must decide whether a new applicant is entitled to take the place of the holder of a license, when the old holder declines, for any reason, to ask for a renewal thereof, where the ratio of saloons to population is greater than 1 to 500.

After mature deliberation, we have concluded that he has no such right. We do not mean by this to say that such new applicant may not be granted a license in the place of an old licensee, under the power of selection vested in the licensing body; but we are of opinion that the total number of licenses to be granted must be held to have been diminished by one on account of the failure of an old holder to apply for a renewal; that as to that license it must be held to have been voluntarily surrendered, within the meaning of the act. We are led to this conclusion by a consideration of the evident purpose of the legislature, as evidenced by the whole act, which was to gradually work a reduction of the number of saloons until they reached the ratio fixed by the statute, and to effect this end without undue hardship to those already engaged in the business. It is, we think, clear that, but for this latter consideration, the legislature would have at once fixed the number of licenses to be granted at the statutory ratio.

These conclusions do not necessarily mean that the legislature sought to, or did in fact, create a property right in the holder of a license to a renewal thereof. It means only that, so long as the holder of a license is able to meet the requirements of the licensing body, and move it to exercise its discretionary power of selection in his behalf, he shall be permitted to remain in the business, even though by so doing the number of saloons continues to be higher than the ratio fixed by the statute. When he fails to apply for a renewal, then the number to be granted is reduced by one, if the number in force is greater than the statutory ratio. Any other construction would clearly prevent any *sensible* reduction in the number of saloons, to effect which was, as we have seen, the cardinal object of the legislation.

Our former conclusion denying the writ is affirmed.

STEERE, MCALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred with BROOKE, J.

MOORE, C. J. I concur in the result but do not approve of the language, which I regard as dictum in this case.

BLAIR, J., concurred with MOORE, C. J.